FILED

11/21/2017

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 17-0173

DA 17-0173

IN THE SUPREME COURT OF THE STATE OF MONTANA

2017 MT 288N

IN THE MATTER OF THE ESTATE OF:

PAUL L. KURTH,

      Deceased.

APPEAL FROM:    District Court of the Eleventh Judicial District,
In and For the County of Flathead, Cause No. DP-13-043(A)
Honorable Amy Eddy, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Evan F. Danno, Danno Law Firm, P.C., Kalispell, Montana

      For Appellee:

          Matthew Hutchison, Ramlow & Rudbach, PLLP, Whitefish, Montana

Submitted on Briefs:  September 13, 2017

Decided:  November 21, 2017

Filed:

_____
Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Sinda Puryer (Sinda) appeals from an order of the Eleventh Judicial District Court, Flathead County, appointing Bruce Barstis (Barstis) personal representative of the Estate of Paul L. Kurth (Estate). We affirm.

¶3 Paul L. Kurth (Kurth) died in January 2000 at the age of 82. Kurth never married or had children. He was, however, survived by nine nieces and nephews, including Sinda, a niece, and Barstis, a nephew. For the last several years of his life, Kurth lived with Sinda and her husband Marty Puryer (Marty) (together, the Puryers). On February 19, 1998, two years before Kurth's death, Marty handwrote a document entitled "Instructions and Last Will and Testament of Paul L. Kurth" (Will). Kurth allegedly dictated the Will to Marty and then signed it. The Will left everything Kurth owned to the Puryers and appointed Marty as personal representative. When Kurth passed away in 2000, he held a real property interest in mineral rights in eastern Montana. In 2001, Sinda hired an attorney to administer Kurth's estate, but did not pursue probate of the Will at that time.

¶4 Approximately ten years later, an oil and gas company contacted Barstis, wanting to lease the mineral rights. Barstis retained an attorney and in February 2013 notified all

2

of Kurth's heirs, including Sinda, that the Estate needed to be probated and the mineral rights distributed. At that time, Barstis offered to be personal representative. In response to Barstis's notice, Marty filed a petition to formally probate the 1998 Will. Barstis challenged the Will, arguing that the time for probate had passed. The District Court agreed with Barstis, ruling in November 2015 that § 72-3-122(1), MCA, barred probate of the Will and, accordingly, Kurth died intestate. We affirmed the District Court's determination, holding Kurth died intestate and that the Estate should be distributed in accordance with Montana's intestacy statutes in *In re Estate of Kurth*, 2016 MT 188, ¶ 32, 384 Mont. 261, 378 P.3d 1151.

¶5  Thereafter, Barstis filed a petition in District Court to determine heirs, appoint himself as personal representative, and to supervise administration. Barstis notified all potential heirs and interested parties of his petition. Sinda was the only potential heir who objected to Barstis's petition—she requested the District Court appoint a special administrator and require bond to secure such performance. On February 16, 2017, the District Court held an evidentiary hearing on Barstis's petition, at which both Barstis and Sinda testified. The District Court subsequently recognized Kurth's nine nieces and nephews as the Estate's heirs and granted Barstis's petition, appointing him personal representative and ordering supervised administration. The parties do not dispute the District Court's recognition of the heirs. However, Sinda appeals the court's appointment of Barstis as personal representative, arguing Barstis's conflicts of interest preclude him from being able to fairly administer the Estate. Specifically, Sinda alleges Barstis already breached fiduciary duties to the Estate by taking money for his personal use. She argues

3

Barstis and other heirs previously leased mineral rights and kept the proceeds for themselves, demonstrating that their interests are contrary to those of the Estate. Thus, Sinda argues no heir, including Barstis, can be appointed personal representative and that necessitates the appointment of a special administrator. Barstis responds, acknowledging that he and some of the other heirs did enter into leases for some of the mineral rights. He contends, however, that such leases do not present a conflict of interest precluding him from acting as personal representative.

¶6 We address the issue of whether the District Court correctly appointed Barstis as the Estate's personal representative. This Court reviews a district court's appointment of a personal representative to determine whether the district court correctly applied the law. *In re Estate of Bennett*, 2013 MT 228, ¶ 6, 371 Mont. 270, 312 P.3d 400. Pursuant to § 72-3-502(6), MCA, heirs of a decedent have priority in being appointed as personal representative of an estate. A personal representative is a fiduciary who has a duty to "settle and distribute the estate of the decedent . . . as expeditiously and efficiently as is consistent with the best interests of the estate." Section 72-3-610, MCA. Thus, a district court can "refuse to appoint a person as personal representative for cause if there is a conflict of interest between that person's interests and those of the estate." *In re Estate of Kuralt*, 2001 MT 153, ¶ 19, 306 Mont. 73, 30 P.3d 345 (quoting *In re Estate of Peterson*, 265 Mont. 104, 108, 874 P.2d 1230, 1232 (1994)).

¶7 As Kurth's heir, Barstis has priority in being appointed personal representative over a special administrator. Barstis testified that he understands the fiduciary duties of a personal representative and is willing to investigate all avenues for recovery of Estate

4

assets. Furthermore, review of the record does not reveal a conflict of interest between the interests of Barstis and the Estate. Instead, Barstis's and the Estate's interests are aligned. The District Court did not incorrectly appoint Barstis as personal representative simply because he already started to lease the Estate's mineral rights. Barstis testified he and the other heirs would repay the Estate if any money was improperly taken from it under the mineral leases. The District Court did not observe any evidence supporting Sinda's contention that the mineral lease transactions were fraudulent. Furthermore, by ordering supervised administration of the Estate, the District Court ensured Barstis "is responsible to the court, as well as to the interested parties, and is subject to directions concerning the estate made by the court on its own motion or on the motion of any interested party." Section 72-3-404(1), MCA. Because the record does not demonstrate a conflict of interest between Barstis and the Estate, we hold the District Court correctly appointed Barstis as the Estate's personal representative.

¶8     We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. This appeal presents no constitutional issues, no issues of first impression, and does not establish new precedent or modify existing precedent.

¶9     Affirmed.

/S/ LAURIE McKINNON

We Concur:

/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ MICHAEL E WHEAT
/S/ JAMES JEREMIAH SHEA

5